# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | SUZANNE B. CONLON | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4789 | DATE | 8/21/02 |
| CASE TITLE | Michael Lynch (A-15561) v. Lieutenant Robinson, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for leave to file *in forma pauperis* is granted. The complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim, terminating case. Any other pending motions are denied as moot. The court orders the trust fund officer at plaintiff's current place of incarceration to deduct $ 9.10 from plaintiff's account for payment to the clerk of court as an initial partial filing fee. A copy of this order shall be sent to the trust fund officer at Menard Correctional Center. This dismissal counts as one of plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g).

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | 5 |
| x | Docketing to mail notices. | | | |
| x | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CLH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LYNCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 02 C 4789 |
| ) | |
| LIEUTENANT ROBINSON, et al. ) | |
| ) | JUDGE CONLON |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Michael Lynch, currently an inmate at Menard Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. The court finds that Lynch is unable to prepay the filing fee. The court grants Lynch's motion to proceed *in forma pauperis* and assesses an initial partial filing fee of $ 9.10 pursuant to 28 U.S.C. § 1915(b)(1). The trust fund officer at Lynch's current place of incarceration is ordered to collect, when funds exist, the partial filing fee from Lynch's trust fund account and pay it directly to the clerk of court. Thereafter, the trust fund officer at the correctional facility where Lynch is confined is directed to collect monthly payments from Lynch's trust fund account in the amount of 20% of the preceding month's income credited to the account. Monthly payments collected from Lynch's trust fund account shall be forwarded to the clerk of court each time the account balance exceeds $10 until the full $150 filing fee is paid. Separate deductions and payments shall be made with respect to each action or appeal filed by Lynch. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, IL 60604, attn: Fiscal Dept., and shall clearly identify Lynch's name and the case number assigned to this action.



Under 28 U.S.C. § 1915(e)(2), the court is directed to dismiss a suit brought *in forma pauperis* at any time if the court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Lynch, who was confined at Stateville Correctional Center during the events of this complaint, makes numerous claims in this voluminous complaint. Most center on the disciplinary ticket he was written on October 31, 2000, and the remainder concern his medical care. The court will consider each in turn.

In September 2000, Lynch witnessed a correctional officer attack another inmate. Lynch spoke with the supervising lieutenant Robinson about the incident and was told not to make waves and enemies. During the third week of October, Robinson pulled Lynch out of the lunch line and, while pat searching him, told him that encouraging other inmates to write grievances could be construed as dangerous communications. On October 28, 2000, Lynch, along with about 15 other inmates, was escorted to a dayroom for urine screening. Robinson was in charge of taking Lynch's sample. On October 31, 2000, Robinson wrote Lynch a disciplinary report charging him with violating Rule 504(a) § 203, drugs and drug paraphernalia. Lynch claims that Officer Robinson fabricated the report.

Hearing investigator McNair failed to conduct a prehearing investigation as required by the Illinois Administrative Code (IAC).

On November 3, 2000, Lynch appeared before a hearing committee composed of only one officer, Hawkins, in violation of IAC rules. Lynch was founded guilty and given six months segregation, six months of good time was revoked, reduction to C grade for six months, and denial

of commissary for six months. Lynch grieved the ticket. On January 24, 2001, Warden Briley ordered the Adjustment Committee to rehear the disciplinary report because of procedural errors. The rehearing was held on February 2, 2001. Lynch's witness was not called. Lynch never received a summary report, and he served his full sentence. Lynch grieved the rehearing and the Administrative Review Board recommended that the grievance be denied on August 31, 2001.

Lynch complains that while he was in segregation, he was not able to go to the yard and was celled with several different inmates who either threatened him or were mentally ill. He seeks money damages and an injunction ordering the restoration of his good time and expungement of the disciplinary ticket.

In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the Supreme Court held that damage claims in prison disciplinary proceedings, based on allegations that would necessarily imply the invalidity of the punishment imposed, are not cognizable under § 1983 unless the finding of the Adjustment Committee is reversed in some manner. If Lynch's disciplinary report was fabricated and based on a false reading of Lynch's urine sample and if his witness could have cleared Lynch of the charges, then proof of these allegations would undermine the validity of the disciplinary finding. Lynch has not proffered any evidence that the findings of this disciplinary hearing have been reversed in some manner, other than the rehearing that was ordered because of procedural errors. In fact, he grieved the rehearing, and the ARB recommended that his grievance be denied. Lynch's claims for money damages for the time he spent in segregation and for reduction in grade and denial of commissary are therefore not cognizable under § 1983 unless and until the disciplinary action has been expunged or overturned.

Moreover, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that state-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The Seventh Circuit has held that disciplinary segregation in Illinois is not an atypical, significant deprivation. *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995). Although Lynch complains about the conditions in segregation, he has not alleged that he suffered any physical injury as a result of not being able to go to the yard or being celled with several inmates who were mentally ill. Under 42 U.S.C. § 1997e(e), "no Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."

An inmate may not use a civil rights action in an attempt to gain release or shorten his time of imprisonment or supervised release; his sole remedy is by way of a petition for a writ of habeas corpus, *Preiser v. Rodriguez*, 411 U.S. 475 (1973), with its concomitant requirement of exhaustion of state remedies. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). Lynch accordingly may seek restoration of his good time only through a petition for a writ of habeas corpus after he has exhausted his state remedies.

Allegations of an inadequate investigation does not state a violation of a plaintiff's civil rights. *See Hanrahan v. Lane*, 747 F.2d 1137, 1142 (7th Cir. 1984); *McDonald v. State of Illinois*, 557 F.2d 596 (7th Cir.), *cert. denied*, 434 U.S. 966 (1977). Moreover, violations of state laws or procedural guarantees do not of themselves constitute a violation of federal rights protected under § 1983. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (*en banc*), *cert. denied*,

489 U.S. 1065 (1989). Lynch accordingly has no claim in regard to his charge of a failure to conduct a prehearing investigation.

In the second part of his complaint, Lynch makes numerous complaints about his medical care at Stateville. Lynch was transferred to Stateville on July 26, 2000. His medical file indicated that he suffers from chronic sinusitis, migraine headaches for which he received prescription medicine, and degenerative bone disease. Prior to his transfer he received two cortisone injections to control inflamation and pain.

On August 4, 2000, Lynch submitted a letter to the medical administrator and acting medical director, complaining that his medical problems, except for his chronic hypertension, had not been addressed since his transfer.

Lynch saw Dr. Tilden for his hypertension the following week, but Dr. Tilden deferred treatment of his other problems.

Lynch wrote numerous letters and filed several grievances; however, diagnostic examination of his medical problems and medical treatment were deferred for about a year.

In January 2001, Lynch's hypertension medicine was delayed for about two weeks. CMT Heron told Lynch that the medicine was being delivered by UPS from Hanover, Maryland. Lynch was then given Procardia to substitute for his regular medication. However, Lynch's medical file clearly indicated that he was allergic to Procardia. Lynch took the medicine anyway and subsequently became ill. Lynch's regular medicine was delayed regularly over the next 12 months.

Lynch was given Midrin to control his migraine headaches and in July 2001, Dr. Tilden referred him to an ear, nose, and throat specialist. The specialist ordered further diagnostic treatment, but Lynch never received it.

In September 2001, Lynch's migraine medication was discontinued without explanation. During the third week of October 2001, Dr. Ngu examined Lynch and ordered medication for his migraine headaches. Dr. Smith later canceled the prescription.

On November 4, 2001, Dr. Tilden examined Lynch for complaints of pain in his lower neck, left shoulder, arm, wrist, hand, and knee. X-rays were taken and revealed the Lynch's 4th, 5th, and 6th cervical vertebrae were degenerated. Lynch was given a prescription for a mild pain reliever and a muscle relaxant. Lynch asked to be examined by a bone specialist. Dr. Smith did not respond to any of Lynch's requests.

The Eighth Amendment protects inmates from deliberate indifference to a serious injury or medical need. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), holds that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety;" and is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and draws the inference. Neither negligence nor even gross negligence nor incompetence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. *See Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir. 1991) (noting that any act with a state of mind less than intent or criminal recklessness, such as negligence or gross negligence, does not amount to punishment).

Allegations of negligence or medical malpractice or incompetence do not state an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir.1997). These standards apply both to prison guards and to medical personnel. However, the dissatisfaction or disagreement with

the method of treatment or inability to effect a final cure does not suggest that those who treat an inmate exhibited deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997); *Estate of Cole v. Fromm*, 94 F.3d 254 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987). The question of whether a certain diagnostic technique or form of treatment should be prescribed "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A prisoner does not have a right to a particular type of medical treatment. *Meriwether*, 821 F.2d at 413. Evidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim. *Id.* (*citing Steele v. Choi*, 82 F.3d 175, 179 (7th Cir.1996)). A disagreement about which of many professionally acceptable treatment plans should have been implemented might state a cause of action for negligence, but is not actionable under the Constitution. *Id.* Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference. *Estelle*, at 107, *Cole* at 261. A plaintiff can show that medical professionals disregarded a serious medical need "only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). *Cole* at 261-62. "Society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Lynch's complaint and copies of his letters, grievances, and the like demonstrate that Lynch saw doctors on numerous occasions while he was at Statcville. It appears that Dr. Smith and Dr. Tilden disagreed as to whether Lynch needed prescription medication for his sinusitis and migraine

headaches. Lynch also was not sent for diagnostic tests as often or as soon as he thought he should be. However, nothing in Lynch's complaint and attachments indicate that any of the defendants acted with deliberate indifference to his serious medical needs, that is, knew of and disregarded an excessive risk to his health.

Lynch encountered some delays in receiving his medicine for hypertension. However, Lynch states that he was told that this was because of a shipping delay, which is not evidence of deliberate indifference. In fact, when Lynch complained about not receiving his medicine for hypertension, he was given a substitute, to which he was allergic. Giving Lynch medication when the file stated that he was allergic to it may be negligence or malpractice but it does not rise to the level of deliberate indifference.

Lynch unfortunately has a number of medical problems that cause him pain and discomfort. However, his obvious dissatisfaction or disagreement with the method of treatment or inability to effect a final cure does not suggest that those who treated him exhibited deliberate indifference.

This suit is accordingly dismissed for failure to state a claim upon which relief may be granted. Lynch is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). If he wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Rule 4(a)(4), Fed.R.App.P. If he does so, he will be liable for the $105 appellate filing fee. Unless he is granted leave to proceed *in forma pauperis*, he will have to pay the fee immediately. If he cannot do so, the appeal will be dismissed, but he will remain liable for the fee and it will be deducted from his inmate trust fund account in installments. *Evans*

v. *Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). If this court finds that appeal is not taken in good faith, and the Court of Appeals agrees, he will not be permitted to proceed *in forma pauperis* and pay the fee in installments, but will have to pay the fee immediately or the appeal will be dismissed. 28 U.S.C. § 1915(a)(3). To avoid a finding that the appeal is not taken in good faith, a motion to proceed *in forma pauperis* on appeal should explain the grounds for the appeal. *See Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999); Fed. R. App. P. 24(a)(1)(C).

IT IS SO ORDERED.

SUZANNE B. CONLON, Judge
United States District Court

DATED: 8/21/02